UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE-OPELOUSAS DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL NO. 6:10-cr-00035** |
| **VERSUS** | **JUDGE HAIK** |
| **JAMES A. BARRAGAN** | **MAGISTRATE JUDGE HANNA** |

**REPORT AND RECOMMENDATION
ON
<u>MOTION TO SUPPRESS EVIDENCE</u>**

**(Rec. Doc. 30)**

On April 6, 2010, defendant James A. Barragan filed a motion to suppress evidence (Rec. Doc. 30), which was opposed (Rec. Docs. 32, 52).  The undersigned magistrate judge analyzed the parties' arguments and submitted a report and recommendation without holding an evidentiary hearing.  (Rec. Doc. 35).  The defendant objected to the report and recommendation.  (Rec. Docs. 36-44).  The district judge disagreed with the undersigned's findings and ordered that an evidentiary hearing be held.  (Rec. Doc. 51).  An evidentiary hearing was held on August 2, 2010.  For the reasons explained below, the undersigned recommends that the defendant's motion to suppress (Rec. Doc. 30) be denied.

## FACTUAL BACKGROUND

In his motion, Barragan asks the court to suppress "all evidence seized as a result of the search of the residence located at 148 Emerite Drive, Lafayette, Louisiana, on or about June 3, 2009, to include any and all statements, written and/or oral, made after the arrest of the defendant." (Rec. Doc. 30, p. 1). Barragan claims that property was illegally seized without a warrant and/or without valid consent for the search, that the search was made without the issuance of a lawful search warrant and/or without valid consent, that the search of the premises was in an area not within Barragan's immediate control, that the search warrant was insufficient, that property seized in the execution of the warrant was not described in the warrant, that property seized was not in plain view of the officers executing the warrant, and that the officers executing the warrant failed to leave a receipt for the items seized. (Rec. Doc. 30, ¶1 – 7). Evidence, in the form of testimony from James Barragan, Mr. Barragan's mother Phuong "Jane" Barragan, and Agent Kane Marceaux, was submitted at the hearing of August 2, 2010. Also offered into evidence at the hearing were the application for the search warrant and the search warrant itself (Government's Exhibit No. 1), the transcript of James Barragan's probation revocation hearing held in the 15th Judicial District Court on November 18, 2009

(Government's Exhibit No. 2), and a diagram of the floor plan of the residence at 148 Emerite Drive (Defendant's Exhibit No. 1).

According to the evidence adduced at the hearing, Kane Marceaux, an employee of the Lafayette City Police Department who is a task force agent assigned to the DEA, was told by Detective Sonny Stutes that telephone conversations between Jonathan Old, an inmate in the Lafayette Parish Prison who was a known crystal methamphetamine dealer, and Alisha Fontenot, Old's girlfriend and the mother of his child, were monitored. According to Stutes, their conversations indicated someone named "Hush" was in possession of a quantity of narcotics. Marceaux was not privy to the contents of the telephone conversations beyond his discussions with Detective Stutes, however, he determined through a Lafayette Metro Narcotics agent who was familiar with a "Hush," that "Hush" resided at 148 Emerite Drive in Lafayette. At the hearing, Barragan confirmed that his nickname is "Hush" and that he was living at 148 Emerite Drive at the relevant time.

Agents Marceaux, Chad Berard, Emmanuel Washington, and Vernon Jones went to that address on June 3, 2009, and observed a vehicle parked there. They learned that the vehicle was that of Alisha Fontenot. Agents Marceaux and Berard knocked on the door of the residence and spoke with Phuong "Jane" Barragan, who invited them inside. Mrs. Barragan told them that she owned the house, that she used

the house for her sewing business, and that her son, James Barragan, lived there. According to Marceaux, she gave them permission to search the house, a point Ms. Barragan denies, but the agents did not conduct a search at that time. At the request of the agents, Mrs. Barragan telephoned her son, who was on the way to Baton Rouge with Ms. Fontenot and Ms. Fontenot's baby for a doctor's appointment. Barragan confirmed, in his testimony at the suppression hearing, that he is the godfather of Fontenot and Old's baby. He also confirmed that he was eastbound on Interstate 10 when his mother called him on June 3, 2009.

    Once Mrs. Barragan telephoned her son, Agent Marceaux spoke with Barragan and asked him for consent to search the premises. Barragan told the agent that, when he returned to Lafayette, he would call the agents and permit them to search the residence. Agent Marceaux informed Barragan that the agents were not going to leave the residence. Barragan became angry and told them to get out of the house. Agent Marceaux learned from Barrragan's probation officer that Barragan was on probation and had recently failed a drug screen for methamphetamine. At that point, while two DEA Task Force agents remained at the residence, Agents Marceaux and Berard left to obtain a search warrant.

    Agent Marceaux was told by one of the agents who remained at the house that, shortly after he and Berard departed, Dustin Warren arrived at the residence, stating

that he was there to collect some clothing. The detectives remaining at the scene detained him. Neither Barragan, Mrs. Barragan, nor Warren himself told the agents that Warren lived there. According to Marceaux, Mrs. Barragan indicated the room where the narcotics were ultimately found was her son's room.

A search warrant was issued that afternoon based on the application and affidavit of Agent Marceaux. When Agents Marceaux and Berard returned to 148 Emerite Drive with the search warrant, they provided a copy to Mrs. Barragan who reluctantly complied with the warrant and allowed the search.

The agents found drug paraphernalia in the residence, and a safe was found in a bedroom closet. When the safe was opened, suspected methamphetamine was found (which was later analyzed and confirmed to be methamphetamine) along with additional drug paraphernalia and a semiautomatic pistol.

Mrs. Barragan and James Barragan testified that the room where the drugs were found was occupied by Dustin Warren who "rented it" by paying utility bills. According to the defendant, the decision to allow Warren to live in that room was his mother's, and without her approval, Warren could not have lived there. James Barragan testified that he lived in the other bedroom and that he did not have a key or access to Warren's bedroom. Mrs. Barragan testified Warren had the only key and

that nobody asked her if Warren lived in that room.  Further, James Barragan testified that he did not keep anything in the room.

Marceaux testified that Mrs. Barragan suggested the bedroom where the drugs were found belonged to her son and the door was not locked.  He also testified that there was no indication that the other bedroom was anything more than a "spare" bedroom while the bedroom where the drugs were found looked like it was occupied.  It was uncontradicted that nothing was taken from the room where the drugs were found before the search warrant was executed.

### DISCUSSION AND ANALYSIS

Barragan seeks to suppress all evidence seized as a result of the search as well as all statements he made after being arrested.

**A.   THE SUFFICIENCY OF THE SEARCH WARRANT**

Barragan contends that the premises was searched without the issuance of a lawful search warrant and/or without valid consent to the search.  (Rec. Doc. 30, ¶2). Barragan further contends that the search warrant is insufficient on its face because it (a) fails to describe the area of the building to be searched with sufficient particularity; (b) fails to describe the property seized with sufficient particularity; (c)

fails to describe the persons to be searched with particularity; and (d) was not based on probable cause due to double hearsay in the affidavit. (Rec. Doc. 30, ¶4 and ¶5).

When a facial challenge to the sufficiency of a warrant affidavit is made, the warrant affidavit must be examined to determine whether the totality of the circumstances indicate that the affidavit was supported by probable cause.[1] Furthermore, regardless of the existence of probable cause, evidence obtained by law enforcement officials acting in objectively reasonable good-faith reliance upon a search warrant is admissible.[2] Therefore, it is not necessary to reach the probable cause issue if the evidence could have been admitted under the good-faith exception.[3] The issuance of a search warrant by a magistrate, which is supported by more than a "bare bones" affidavit, is sufficient to establish good faith on the part of the law enforcement agents who execute the warrant.[4] But good faith is absent if the warrant is based on an affidavit that is so lacking in indicia of probable cause that reliance upon it by the agents is entirely unreasonable.[5] Thus, the affidavit prepared by Agent

---

[1] See, e.g., *Dickey v. Huddleston*, 14 F.3d 52, 55 (5th Cir. 1993); *Hale v. Fish*, 899 F.2d 390, 398-99 (5th Cir.1990).

[2] *United States v. Leon*, 104 S.Ct. 3405, 3420-21 (1984).

[3] *United States v. Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992); *United States v. Craig*, 861 F.2d 818, 821 (5th Cir. 1988).

[4] *Satterwhite*, 980 F.2d at 321.

[5] *Satterwhite*, 980 F.2d at 320, citing *Leon*, 104 S.Ct. at 3421.

Marceaux must be reviewed to determine if the agents executing the search were reasonable in relying upon it and, therefore, acted in good faith.

The test to be applied in deciding whether sufficient particularity has been provided is whether the descriptions set forth in the warrant and/or the affidavit would permit an executing officer to reasonably know what place is to be searched and what items are to be seized.[6] Applying this test, the undersigned finds that both the affidavit and the warrant clearly and adequately describe the place to be searched and the property to be seized. This was no "bare-bones" affidavit or warrant. An officer executing the warrant would reasonably be able to tell, from the face of the warrant and/or the affidavit, what place should be searched and what items should be seized. Thus, the level of particularity utilized in the warrant and the warrant affidavit does not require the suppression of any evidence.

Barragan also complains that the warrant does not adequately describe the persons to be searched. (Rec. Doc. 30, ¶4(c)). While he is correct that the warrant does not identify persons to be searched, there is no evidence that any person at the residence was searched. Therefore, this issue lacks merit.

---

[6] *United States v. Shugart*, 117 F.3d 838, 845 (5th Cir. 1997), citing *United States v. Beaumont*, 972 F.2d 553, 560 (5th Cir. 1992), *cert. denied*, 508 U.S. 926, 113 S.Ct. 2384, 124 L.Ed.2d 288 (1993).

Finally, Barragan complains that the warrant lacks probable cause because it is based upon double hearsay. (Rec. Doc. 30, ¶4(d)). As noted above, much of the information set forth in Agent Marceaux's affidavit was acquired by him from Detective Stutes. But Agent Marceaux independently confirmed that Fontenot's vehicle was at the Barragan residence, that Barragan lived there, that Barragan goes by the nickname "Hush," and that Fontenot and Barragan were together at the time the agents were at the residence, and that Barragan, who was on probation for a drug offense, had recently tested positive for methamphetamine - the same drug which Old was known to distribute and which was suspected as a topic of conversation in the intercepted phone conversations with Ms. Fontenot. Based on the totality of the circumstances, including the conversation contents told to Agent Marceaux, the known association between a known dealer of crystal methamphetamine and the defendant, the information corroborated by the agents, the reactions of the defendant and his mother when questioned before the warrant was obtained, and the positive drug screen for methamphetamine, the undersigned finds that there was sufficient probable cause for the issuance of the warrant.

Still, the issue of probable cause is not reached unless the good faith exception to the exclusionary rule does not apply.[7] If the good faith exception applies, probable

---

[7] *Satterwhite*, 980 F.2d at 320.

cause is addressed only if the case involves a novel legal question.[8] Whether a search warrant affidavit is invalidated by hearsay is not a novel legal question.[9] Thus, assuming that the search warrant and/or the affidavit on which it was based contains information in the nature of double hearsay, without deciding that issue, the undersigned finds that the alleged existence of the double hearsay does not require the suppression of any evidence seized in this case.

Barragan argued at the hearing that the good faith exception should not apply in this case because Agent Marceaux and others searched the residence, without Mrs. Barragan's consent, before obtaining the search warrant. The undersigned does not find this to be the case, relying upon Agent Marceaux's stringent denial that any search was conducted between the time that Mrs. Barragan admitted the agents to the residence and the time that the search warrant was obtained, a point which was not particularly contradicted by Mrs. Barragan. Consequently, the undersigned finds that the agents who conducted the search were acting in good faith.

### B. BARRAGAN'S STANDING WITH REGARD TO THE SEIZED PROPERTY

---

[8] *Id.*

[9] *Id.*

On appeal, an issue was raised that was not presented when this motion was originally filed. Barragan contends that the items seized during the search were owned by Dustin Warren and were seized from a room that was rented to and under the sole control of Warren. The government argues that, if this is true, then Barragan has no standing to object to the search of Warren's room or the seizure of Warren's property.

Barragan testified that he rented a portion of the house from his parents, and this was confirmed by Mrs. Barragan in her testimony at the hearing. Barragan also testified that Warren was, at the time of the events described above, renting a bedroom in the house. Offered into evidence was a diagram of the house in which Bedroom No. 1 and Bedroom No. 2 were designated. All of the evidence seized by the agents on the day in question was found in Bedroom No. 1. Barragan and his mother both testified that Bedroom No. 1 was being used solely by Warren. Barragan testified that he owned nothing that was located in Bedroom No. 1. The evidence adduced at the hearing showed that Mrs. Barragan was the owner of the house, and that she approved an arrangement, facilitated by Barragan, under which Warren was permitted use of Bedroom No. 1 in exchange for his payment of the utility bills for the house. Barragan testified that Warren had the only key to Bedroom No. 1.

This evidence indicates that Mrs. Barragan, the owner of the residence, entered into an agreement with Warren concerning Warren's use and possession of Bedroom No. 1. The undersigned therefore finds that Barragan had no reasonable expectation of privacy with regard to Bedroom No. 1 or anything that was located in Bedroom No. 1. Consequently, Barragan has no standing to assert a Fourth Amendment challenge to the seizure of anything that the agents found in Bedroom No. 1.

"Fourth Amendment rights are personal and cannot be vicariously asserted."[10] Consequently, "[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's ... property has not had any of his Fourth Amendment rights infringed."[11] Fourth Amendment protections are presumptively applicable to premises owned or used by an individual; therefore, a person's possessory interest in a residence creates a strong presumption of his subjective and reasonable expectation of privacy therein.[12] Whether there is standing to contest the validity of a search depends on two factors: (1) whether the defendant is able to establish an actual, subjective expectation of privacy regarding the place being searched or the items being seized, and (2) whether

---

[10] *United States v. Mendoza-Burciaga*, 981 F.2d 192, 196 (5th Cir. 1993).

[11] *Rakas v. Illinois*, 439 U.S. 128, 134 (1978).

[12] *United States v. Vega*, 221 F.3d 789, 796 (5th Cir. 2000).

that expectation of privacy is one that society would recognize as reasonable.[13] Therefore, to prevail on this motion to suppress, Barragan must demonstrate that he had a reasonable expectation of privacy with regard to Bedroom No. 1.

Barragan insists, however, that Warren had rented Bedroom No. 1 from Mrs. Barragan. Mrs. Barragan confirmed this arrangement. Additionally, the evidence establishes that Warren retained the only key to that room. Therefore, Barragan did not have a reasonable expectation of privacy concerning that room or its contents, and the undersigned finds that Barragan has no standing to assert a Fourth Amendment claim regarding the search of that room or the seizure of anything found in that room. Because the evidence adduced at the hearing establishes that all items seized from the house at 148 Emerite Drive on June 3, 2009 were found in Bedroom No. 1, the undersigned finds that Barragan has no standing to seek to suppress the seized evidence.

C.  **ADDITIONAL ISSUES RAISED**

In his briefing, Barragan raised four additional issues.

---

[13] *United States v. Gomez*, 276 F.3d 694, 697 (5th Cir. 2001); *United States v. Kye Soo Lee*, 898 F.2d 1034, 1037-38 (5th Cir. 1990).

1. **SEIZURE WITHOUT A WARRANT OR CONSENT**

Barragan contends that property was illegally seized from the residence without a warrant and/or without valid consent to the search. (Rec. Doc. 30, ¶1). At the hearing, however, Mrs. Barragan, who was present at all times while the agents were at the residence on June 3, 2009, testified that nothing was seized or removed from the premises before the search warrant was obtained and executed. Therefore, the undersigned finds that there was no warrantless seizure.

2. **PLAIN VIEW**

Barragan argues that evidence should be suppressed because property seized by the officers executing the search warrant was not in the officers' plain view. (Rec. Doc. 30, ¶6). A warrantless seizure is permitted when law enforcement officers lawfully enter the area where an item is located; the item is in plain view; the incriminating nature of the item is immediately apparent; and the officers have lawful access to the item.[14] This analysis has no applicability when a search is undertaken pursuant to a warrant, and, in this case, there is no evidence that any item was seized from Barragan's residence without a search warrant. In fact, Mrs. Barragan, who was present at all relevant times before and during the search, testified at the hearing that

---

[14] *United States v. Jackson*, 596 F.3d 236, 242 (5th Cir. 2010), citing *United States v. Buchanan*, 70 F.3d 818, 825-26 (5th Cir. 1995).

nothing was seized before the agents presented her with the search warrant. Consequently, whether the items seized were or were not in the plain view of the officers executing the warrant is immaterial, and this contention lacks merit.

    3.    **SEARCH OF AN AREA BEYOND BARRAGAN'S IMMEDIATE CONTROL**

Barragan contends that the law enforcement agents searched an area of the premises that was not within his immediate control. (Rec. Doc. 30, ¶3). Barragan was not present when the house was searched. The United States Supreme Court has held that, when a person is being arrested, it is permissible for the police to search, without a warrant, both the person being arrested and the area within his immediate control, i.e., the area within which the arrestee might have a weapon or destructible evidence.[15] Not only was Barragan not arrested at the time of the search of his residence, he was never present at the residence at any point during the search. Therefore, the "immediate control" issue is inapplicable and, for that reason, there is no merit to Barragan's contention that evidence not in his immediate control at the time of seizure should be suppressed.

    4.    **RECEIPT FOR ITEMS SEIZED**

Barragan contends that evidence should be suppressed because the officers executing the search warrant did not provide a receipt for the items seized. (Rec.

---

[15]     *Chimel v. California*, 395 U.S. 752, 763 (1969).

Doc. 30, ¶7). Barragan does not identify any items that were seized for which no receipt was provided. Furthermore, a detailed receipt was prepared by Agent Marceaux and, according to the face of the receipt, a copy of the receipt was left with Mrs. Barragan. (Rec. Doc. 32-1). Agent Marceaux also testified that he gave a copy of the receipt to Mrs. Barragan. Mrs. Barragan contends that he did not. This factual dispute cannot be resolved. Nevertheless, there is no authority for the contention that the failure to provide a receipt for seized property requires the suppression of the evidence seized. Therefore, the undersigned finds that this contention lacks merit.

### 5.    BARRAGAN'S STATEMENTS

In addition to seeking the suppression of all evidence gathered pursuant to the search warrant, Barragan also seeks to suppress any and all statements he gave following his arrest. (Rec. Doc. 30, pp. 1, 2). No evidence was introduced at the hearing concerning this issue, and in his briefing, Barragan offers no facts in support of his request that his statements be suppressed. He does not identify when the statements were made, to whom they were made, or the content of the statements. He offers his own affidavit stating that he has not been Mirandized or otherwise advised of his Constitutional rights since being arrested in June 2009. The affidavit does not state whether he was Mirandized at the time he was arrested, and it does state whether he gave any statement to any law enforcement officer at any time other than freely

and voluntarily. In light of the paucity of evidence, argument, and authority provided by Barragan, it is recommended that his motion to suppress the statements be denied.

## Conclusion

For the reasons set forth above, the undersigned finds that no warrantless search of the residence located at 148 Emerite Drive was conducted on June 3, 2009. The undersigned further finds that the search warrant that was executed at 148 Emerite Drive on June 3, 2009 was based on probable cause but, even if that was not the case, the undersigned finds that the agents who executed the warrant were acting in good faith reliance upon the warrant. The undersigned alternatively finds that the defendant James Barragan lacks standing to object to the search of Bedroom No. 1 at 148 Emerite Drive and similarly lacks standing to object to the seizure of anything that was found in Bedroom No. 1. The undersigned further finds that the additional issues raised by Barragan lack merit. Therefore,

**IT IS RECOMMENDED** that Barragan's motion to suppress (a) the evidence seized during the search of 148 Emerite Drive on June 3, 2009, and (b) any and all statements given by Barragan following his arrest be **DENIED**.

In the event that anyone is dissatisfied with any part of this report and recommendation, it will be their obligation to file written objections and then provide

a full transcript of the proceedings for Judge Haik's review in connection with any objections.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plan error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

Signed at Lafayette, Louisiana, this 10th day of August, 2010.

Patrick J. Hanna
United States Magistrate Judge
800 Lafayette St., Suite 3500
Lafayette, Louisiana 70501
(337) 593-5140 (phone) 593-5155 (fax)